# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | Cr. NO. 99-505 |
| **AXEL SANTOS-CRUZ** | : | |

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S PRO SE MOTION FOR A REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND AMENDMENT 782

Defendant Axel Santos-Cruz has filed a pro se motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Sentencing Guidelines. Amendment 782, which became effective on November 1, 2014 and was made retroactive on that date, reduced by two levels the base offense level applicable to many drug trafficking offenses. The government agrees that the amendment lowers the defendant's applicable guideline range and he is eligible for consideration of a reduction of sentence. Santos-Cruz was sentenced to the top of the guideline range of 360 months to life imprisonment. The government agrees that Santos-Cruz is eligible to a reduction to a point within the amended range of 324 to 405 months. Santos-Cruz seeks a reduction beyond that authorized by Amendment 782 and U.S.S.G. § 1B1.10, which is not permitted. Consistent with his initial sentence, the government agrees that the defendant's sentence should be reduced to a point at or near the top of the amended range, but will defer to the Court's judgment as to a whether reduction to a lower point in the range is nonetheless warranted.

I.  **BACKGROUND**

On August 24, 1999, Axel Santos-Cruz and his wife, Iris Davila, were charged with conspiracy to distribute more than 1,000 grams of heroin and 50 grams of crack cocaine, in violation of 21 U.S.C. 846, along with substantive distribution counts. The defendants went to trial, and on March 23, 2000, Santos-Cruz was found guilty of the conspiracy and one count of distributing heroin.

The evidence at trial established that Santos-Cruz and Davila were the leaders of a conspiracy to distribute crack cocaine and heroin in the Reading, Pennsylvania, area for a seven-month period in 1998 and 1999. Davila and Santos-Cruz, who were equal partners, employed family members as midlevel suppliers, and street level sellers to sell crack and heroin under the brand names "Titanic" and "High Power." Davila was primarily responsible for the crack operation, while Santos-Cruz essentially controlled the heroin operation. Most of the crack and heroin sales were conducted in a nearby housing project at the house of co-coconspirator Angel Prieto. The evidence established that the defendants sold approximately one-half to one kilo of crack and heroin per week over the course of the conspiracy.

At the sentencing hearing on October 30, 2000, Judge Van Antwerpen found that Santos-Cruz was responsible for the distribution of at least 14 kilograms of crack and 14 kilograms of heroin, which carried the highest base offense level of 38. Santos-Cruz received a four-level enhancement for his leadership role in the offenses, yielding a total offense level of 42. Santos-Cruz was in criminal history category II, and his guideline range was 360 months to life imprisonment. The court sentence Santos-Cruz to life.

Santos-Cruz appealed his sentence, arguing that the Court's drug quantity finding was not supported by the evidence and violated *Apprendi*. The Third Circuit affirmed

the court's quantity determination, noting that the evidence showed that Santos-Cruz sold 14 to 56 kilograms of both heroin and crack during the course of the conspiracy, and the court did not err by holding Santos-Cruz responsible for 14 kilograms of each drug. *United States v. Santos-Cruz*, 45 F. App'x 190, 191 (3d Cir. 2002) (not precedential). [1]

Santos-Cruz was not eligible for a reduction in sentence under the 2008 and 2011 amendments to the crack cocaine guidelines because the quantity of 14 kilograms of crack continued to carry a base offense level of 38. Santos-Cruz now seeks a reduction pursuant to Amendment 782, which lowered the offense levels for most drug offenses.

## II.   DISCUSSION

Section 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In Section 1B1.10 of the Guidelines, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority, and articulated the proper procedure for implementing the amendment in a concluded case.[2] The version of Section 1B1.10 applicable to sentence reductions under

---

[1] In his motion, the defendant again challenges the district court's quantity determination, but recognizes that this Court must use this determination in assessing his eligibility for a sentence reduction.

[2] Section 1B1.10 is based on 18 U.S.C. § 3582(c)(2), and also implements 28 U.S.C. § 994(u), which provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses,

Amendment 782 became effective on November 1, 2014.[3] Under Section 1B1.10: "In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement." § 1B1.10(a)(1).

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court addressed the process for application of a retroactive guideline amendment, emphasizing that Section 1B1.10 is binding. The Court declared: "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 821. The Court required district courts to follow a two-step approach:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Ibid.
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to

---

it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

[3] Application note 8 (2014) provides: "the court shall use the version of this policy statement that is in effect on the date on which the court reduces the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)."

>a term that is less than the minimum of the amended guideline range" produced by the substitution. § 1B1.10(b)(2)(A). . . .
>At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Dillon*, 560 U.S. at 827.

In this case, Amendment 782 lowers Santos-Cruz's guideline range and he is eligible for consideration of a reduction in sentence. Santos-Cruz's offense level for 14 kilograms of crack and 14 kilograms of heroin is now 36,[4] and his total offense level is 40. At the established criminal history category of II, his guideline range is 324 to 405 months. This Court may reduce Santos-Cruz's sentence to a point within this amended range.

Turning to step two, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." *Id.* app. note 1(B)(i); see also U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). The Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. The Court must consider public safety considerations, and may consider information regarding the post-sentencing

---

[4] Pursuant to the drug equivalency tables in Application Note 8(D), the quantity of heroin and crack in this case is equivalent to 63,994 kilograms of marijuana. Under the drug quantity table of Section 2D1.1(c), an offense involving at least 30 but less than 90 kilograms of marijuana carries a base offense level of 36.

conduct or situation of the defendant, whether positive or negative. *See Id.* app. note 1(B)(ii), (iii) The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

Thus, the Court may consider the defendant's conduct in prison as well as the concerns that animated the Court's earlier decision to impose a sentence near the high end of the guideline range. The government notes that Santos-Cruz has received citations for two disciplinary infractions since his incarceration in this case, one for disruptive conduct and one for assaulting a fellow inmate.

While the government does not object to a reduction in this case, it submits that a sentence at or near the top of the range would be appropriate. This would reflect the sentencing court's determination that Santos-Cruz deserved the maximum possible sentence of life imprisonment, while accounting for the fact that Santos-Cruz would face a lower range if sentenced today. The government will leave to the Court's discretion the extent of the appropriate reduction in this case.

Santos-Cruz further asserts that he is eligible for an additional two-level reduction under Amendment 715 to the Guidelines. He is wrong. After Amendment 706 became effective, it became apparent that the original method of calculation set forth in Amendment 706 sometimes resulted in a "sentencing anomaly" whereby some offenders did not receive the benefit of the two-level reduction, while some others received "a reduction greater than intended." U.S.S.G. app. C, amend. 715 (Reason for Amendment ¶ 1) (2008). In order to prevent such an unintended result, Amendment 715 amended then-Application Note 10(D) to section § 2D1.1(c) of the Guidelines to provide that all defendants whose offenses involved crack cocaine received a two level reduction, even if

the offenses also involved other substances. Several exceptions applied, including that the reduction did not apply if the quantity of cocaine base was more than 4.5 kilograms. Thus, Amendment 715 effectively replaced Amendment 706, and created a uniform two-level reduction for the same offenses. *See United States v. Boyd*, --- F.3d ----, 2016 WL 3606579, at *1 (8th Cir. July 5, 2016).

Amendment 715 was subsequently superseded by Amendment 750, which became effective November 1, 2011, and which changed the marijuana equivalency for one gram of crack from 20 kilograms of marijuana to 3,571 grams of marijuana, and eliminated the "anomaly" created by Amendment 706 and fixed by Amendment 715. Amendment 782 did not alter this calculation. The defendant's marijuana equivalency was calculated pursuant to this formula, and Amendment 715 has no application in this case.

In sum, this Court should exercise its discretion in determining whether to reduce the defendant's sentence, and if so, the extent of that reduction within the amended range of 324 to 405 months.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


/s/ Bernadette McKeon
BERNADETTE McKEON
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response to the Defendant's Pro Se Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 was served by first-class mail, postage prepaid, upon:

> Mr. Axel Santos-Cruz
> Reg. No. 51969-066
> FCI Schuylkill
> P.O. Box 759
> Minersville, PA 17954-0759

>> /s/ Bernadette McKeon
>> BERNADETTE McKEON
>> Assistant United States Attorney

DATE: August 26, 2016