THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.: 99-505 |
| IRIS YOLANDA DAVILA<br>AXEL SANTOS-CRUZ | : | |
| | : | |

**GOVERNMENT'S JOINT RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND (THIRD) MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO <u>18 U.S.C. § 3582(c)(2)</u>**

**I.     INTRODUCTION**

Defendants Iris Davila and Axel Santos-Cruz have filed almost identical pleadings entitled "second motion for modification of sentence, pursuant to 18 U.S.C. § 3582(c)(2)," based upon an amendment to the Sentencing Guidelines which lowered the base offense levels applicable to cocaine base ("crack") offenses. In fact, this is their third such motion under 18 U.S.C. § 3582(c)(2), and their latest in a very long line of post-conviction pleadings, petitions, letters, entreaties, and motions. For the reasons discussed below, the government suggests that their motions both be denied.

**II.     FACTUAL BACKGROUND**

On August 24, 1999, Iris Davila, Axel Santos-Cruz and a third defendant were charged with conspiracy to distribute and possess more than 1,000 grams of heroin and 50 grams of crack cocaine. Davila and Santos-Cruz were also charged with one count of possession with intent to distribute heroin. On March 23, 2000, they were convicted of both counts after a jury

1

trial. Davila and Santos-Cruz were married to each other.

The evidence at trial established that Davila and Santos-Cruz were leaders of a conspiracy to distribute crack cocaine and heroin in the Reading, Pennsylvania, area for a seven-month period in 1998 and 1999. PSR ¶ 10. Davila and Santos-Cruz, who were equal partners, employed family members as mid-level suppliers, and street level sellers to sell crack and heroin under the brand names "Titanic" and "High Power." Id. Davila was primarily responsible for the crack operation, while Santos-Cruz essentially controlled the heroin operation. PSR ¶ 11. Most of the crack and heroin sales were conducted in a nearby housing project at the house of co-coconspirator Angel Prieto. PSR ¶ 10. The evidence established that the defendants sold approximately one-half to one kilo of crack and heroin per week over the course of the conspiracy. PSR ¶¶ 17, 23, 24.

Based on the evidence at trial, the Probation Office estimated that they were both responsible for the distribution of at least 14 kilograms of crack and 14 kilograms of heroin. PSR ¶ 28. This was the most conservative estimate based on the distribution of one-half kilo per week, rather than the higher estimate of one kilo per week. This quantity carried the highest base offense level of 38. PSR ¶ 43. The base offense level was increased by two levels for distribution within a protected location, and four levels for her leadership role. PSR ¶¶ 43, 46. With a total offense level of 44 and a Criminal History Category of I, Davila's guideline range was life imprisonment. PSR ¶ 80.

At the sentencing hearing on October 30, 2000, the court found that the total

offense level was 42/I,[1] and Davila's guideline range was 360 months to life imprisonment. The court imposed a sentence of life imprisonment. Santos-Cruz had a prior conviction, making him a Category II offender, with a range of 360 to life. They were sentenced by the trial judge, the Hon. Franklin S. Van Antwerpen. Judge Van Antwerpen recognized these defendants for who they were: pernicious leaders of a drug trafficking gang who ruled the gang and their West Reading housing project through fear and intimidation. They operated literally down the street from the Pennsylvania State Police (PSP) Reading barracks, frequently conducting counter-surveillance on PSP movements. They also operated within 1000 feet of a parochial high school. Together, they ran their drug trafficking organization for almost ten years, eluding law enforcement until PSP was able to make drug buys, recordings, and eventually obtain a court-ordered wiretap. Even then, these defendants disrupted state court proceedings, to the extent that the PSP and local District Attorney's Office asked the federal government to adopt the case federally.

Judge Van Antwerpen was so impressed with the level of criminal sophistication and lack of remorse on the defendants' part that he imposed a sentence at the very top of the Sentencing Guidelines range of 360 months to Life imprisonment. Even then, without prompting from government counsel, the Court specifically recommended that the Bureau of Prisons house these two defendants as far away from Reading, PA as possible so that they could not continue to operated their drug empire from within the prison walls.

---

[1] The court did not impose the two level adjustment for distribution within 1,000 feet of a school because they had not been charged properly with a schoolyard count, citing a technical deficiency in the indictment pursuant to *Watterson*. See PSR pp. 21-23.

## III. POST-CONVICTION PROCEDURAL HISTORY

Since their 2000 sentencing hearings, and the subsequent affirmance of their convictions and sentences by the Third Circuit Court of Appeals, Davila and Santos-Cruz have been vexatious litigators, filing numerous pro se pleadings, petitions, letters, motions, and other assorted requests for relief. Under the current circumstances, a brief review of this history is warranted.

On July 23, 2003, Santos-Cruz filed a 2255 petition.

On July 29, 2003, Davila filed a 2255 petition.

On August 29, 2003, Santos-Cruz filed a re-submitted petition. It was dismissed on September 11, 2003. On September 16, 2003, Davila's petition was dismissed.

On October 2, 2003, Davila filed another pro se 2255 petition. That petition was dismissed on November 5, 2003. Santos-Cruz also re-submitted a petition, which was dismissed on November 6, 2003.

On June 30, 2006, Davila filed a motion for relief of sentence, claiming that Title 18 of United States Code was never properly enacted, despite the fact that she was convicted of Title 21 drug offenses. Her motion was denied on December 6, 2006. She appealed on December 27, 2006. Her certificate of appealability was denied.

On March 7, 2008, Davila filed another motion for modification of sentence, citing Sentencing Guidelines changes established by the Fair Sentencing Act, which was not retroactive. This motion was denied.

On December 22, 2008, Davila filed a sealed letter to the Court.

On May 14, 2009, Davila filed another sealed letter to the Court.

On June 29, 2009, Davila sought the appointment of counsel. That motion was denied on July 1, 2009.

On June 25, 2010, Davila filed a letter for sentence reduction.

On June 9, 2011, Davila filed a letter seeking relief.

On August 8, 2011, Davila filed another letter seeking relief.

On October 31, 2011, Davila filed motion to reduce sentence under 18 U.S.C. § 3582(c)(2). This motion was denied on September 7, 2012.

On September 19, 2012, Davila filed another letter seeking relief.

On November 2, 2012, Davila filed a motion to reduce sentence. That motion was denied on November 8, 2012. On November 27, 2012, Davila filed a pleading demanding that the Court explain to her the dismissal of her motion.

On April 21, 2015, Davila filed a motion to reduce sentence based on the 782 Amendment.

On May 22, 2015, Santos-Cruz filed a motion to reduce sentence based on the 782 Amendment.

On July 5, 2016, Santos-Cruz filed a motion to reduce sentence under 18 U.S.C. § 3582(c)(2).

On July 11, 2016, Santos-Cruz filed a motion to reduce sentence based on the 782 Amendment. On September 16, 2016, his motions were denied. On October 6, 2016, Davila's motions under Amendment 782 and 18 U.S.C. § 3582(c)(2) were also denied.

On October 18, 2016, Davila filed a second motion to reduce sentence under 18 U.S.C. § 3582(c)(2). On January 20, 2017, this motion was denied.

On October 19, 2016, Santos-Cruz filed a second motion to reduce sentence under 18 U.S.C. § 3582(c)(2). On January 20, 2017, this motion was denied.

On February 2, 2017, Davila filed this, her third motion to reduce sentence under 18 U.S.C. § 3582(c)(2).

On February 3, 2017, Santos-Cruz filed this, his third motion to reduce sentence under 18 U.S.C. § 3582(c)(2).

In the meantime, Davila filed a motion for executive clemency, which was not granted. She then filed a second motion for clemency, in the wave of 2016 motions. Santos-Cruz also filed a motion for clemency.

On January 19, 2017, President Obama issued an order granting the clemency requests of both Davila and Santos-Cruz, reducing their life sentences each to 360 months' imprisonment.

Apparently buoyed by a wave of confidence in light of the Congressional and Executive largess bestowed upon them, Davila and Santos-Cruz now ask this Court to grant them further unmerited favor, by further reducing their sentences. These requests should be denied. Judge Van Antwerpen, who tried this case and carefully considered all factors in sentencing these defendants, determined that they merited sentences at the very top of the Guidelines, even life sentences. Now that the Sentencing Guidelines commission has retroactively reduced the Guidelines across the board, these defendants now find themselves with reduced 360-month sentences that still fall squarely within, but not at the very top of, their new Guidelines ranges. They were equally culpable defendants, and, as such, should receive equal sentences.

Davila has repeatedly cited her health concerns. However, these are greatly

overstated.  While it is true that she had breast cancer in the early 2000's, she was successfully treated and cured by Bureau of Prisons doctors.  She does not currently suffer from breast cancer.

Both defendants cite their fair, albeit imperfect, prison conduct records. However, these were taken into account by the Pardon Attorney and the President, in granting them their current reduced sentences.  They do not warrant further relief.  This Court should exercise its discretion to deny their requests for further relief. United States v. Mateo, 560 F.3d 152, 154 (3d Cir. 2009).

### IV. DEFENDANTS' REQUEST FOR ADDITIONAL RELIEF SHOULD BE DENIED.

The defendant argues that this Court should conduct a full resentencing, reexamine the entire sentence consistent with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and grant relief that surpasses the largesse bestowed upon them by the Guidelines reductions and the President's commutations of sentence.  This is simply unwarranted, and their request for a hearing should be denied.

### IV. CONCLUSION

For the foregoing reasons, the defendant's motion for a reduction of sentence should be denied.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


 /s/ David E. Troyer
David E. Troyer
Assistant United States Attorney

7

CERTIFICATE OF SERVICE

I hereby certify that on this date I filed this response via the court's electronic filing (ecf) system, and thus provided service to counsel for the defendants:

Ms. Nancy McEoin
Assistant Federal Defender
Curtis Center
Philadelphia, PA 19106

    /s/ David E. Troyer
David E. Troyer
Assistant United States Attorney

Dated: February 10, 2017